**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

------------------------------------------------------x
In re:                                              :        Chapter 7
                                                    :
                                                    :        Case No.: 06-50358(AHWS)
    Paul E. Dwyer,                                  :
        Debtor.                                     :
------------------------------------------------------x
Nancy DeBrizzi,                                     :
    Plaintiff,                                      :
                                                    :
v.                                                  :        Adv. Proc. No.: 06-05086
                                                    :
                                                    :
                                                    :
Paul E. Dwyer,                                      :
    Defendant.                                      :
------------------------------------------------------x

APPEARANCES:

Thomas J. Sansone, Esq.                    Attorney for Plaintiff Nancy DeBrizzi
Carmody & Torrance, LLP
195 Church St.
P.O. Box 1950
New Haven, CT 06509

Max L. Rosenberg, Esq.                     Attorney for Defendant Paul E. Dwyer
Thornberry & Rosenberg, LLC
3333 Main St., Suite 203
Stratford, CT 06614

**MEMORANDUM AND ORDER ON COMPLAINT OBJECTING
TO DISCHARGE OF DEBT UNDER 11 U. S. C. § 523(a)(2)(A)**

Alan H. W. Shiff, United States Bankruptcy Judge:

The defendant commenced this chapter 7 bankruptcy case on August 24, 2006. On December 4, 2006, the plaintiff filed this adversary proceeding, seeking a determination under 11 U.S.C. § 523(a)(2)(A) that a debt owed to her is nondischargeable. For the reasons that follow, judgment shall enter in favor of the defendant.

## BACKGROUND

The debtor/defendant was the principal and an officer of Monetary Funding Group, Inc. ("MFG, Inc."), a loan company. (Compl. ¶ 6.) MFG, Inc. occasionally borrowed funds from third parties, including the plaintiff, to finance loans. (Compl. ¶ 7.) On or around April 16, 2002, MFG, Inc. made a loan to Maxie G. Taylor in the principal amount of $100,000. (doc. # 61 ¶7; doc. #79 ¶7.) On April 25, 2002, the plaintiff made a loan of $100,000 to the defendant, which is the subject debt in this proceeding. The loan was memorialized by a promissory note which was signed by the defendant both as an agent of MFG, Inc. and in his individual capacity. (Pl.'s Ex. 1.) The defendant concedes that the loan has not been repaid in full. (doc. #61 ¶9; Tr.46:7-10, Dec. 9, 2009.)

## DISCUSSION

The public policy promoted by bankruptcy allows "honest but unfortunate" debtors an opportunity to reorder their financial affairs and obtain a fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). That policy is accomplished by, *inter alia*, a discharge of certain preexisting debts. *See* 11 U.S.C. § 523(a). The party objecting to

the discharge of a debt bears the burden of proof by a preponderance of the evidence that the requirements of the relevant subsection, here § 523(a)(2)(A), have been satisfied.  See Fed. R. Bank. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Pierce*, 323 B.R. 21, 27 (Bankr. D. Conn. 2005).  It is widely understood that debts claimed to be excepted from discharge should be narrowly construed.  *See e.g.*, *In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996) (internal citations omitted); *In re Landrin*, 173 B.R. 307, 310 (Bankr. S.D.N.Y. 1994).

In relevant part § 523(a) provides:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt —
> (2) for money . . . to the extent obtained, by —
> (A) false pretenses, a false representation, or actual fraud . . . .

11 U.S.C. § 523(a)(2)(A) (2009).

In order to prove that a debt is nondischargeable under § 523(a)(2)(A), a plaintiff must satisfy each of the following elements:

(1) the debtor made a false representation;
(2) the debtor knew it was false at the time it was made;
(3) the debtor made the representation with the intention and purpose of deceiving the creditor or inducing the creditor to act to the creditor's detriment;
(4) the creditor relied on the representation to the creditor's detriment; and
(5) the false representation was the proximate cause of the creditor's loss.

*E.g.*, *In re Roberti*, 183 B.R. 991, 1005 (Bankr. D. Conn. 1995).

It is beyond peradventure that a fraudulent representation has to have been made by a debtor/defendant to a creditor/plaintiff who claims to have been injured by

the deception. There is no support in the evidence for that conclusion. To the contrary, the court finds the following:

(1) The defendant and the plaintiff's husband, Rosario Debrizzi ("husband"), knew each other for more than 16 years at the time the loan was made (Tr. 22:22-23);

(2) The husband and the defendant had done business together over the course of their 16-plus year friendship (Tr. 23:8-10);

(3) The defendant and the husband had at least one conversation about the health of the defendant's business and about investment opportunities therewith (*e.g.*, Tr. 25-26; Tr. 57:14-17);

(4) The husband, *not the defendant*, was the party who convinced the plaintiff to make the loan:

- "I [plaintiff] made this loan to [the defendant] *because my husband said that* [the defendant] needed money for his company to pay a loan out and that when the loan was paid back I would get the principal money, plus interest." (Tr. 4:25; Tr. 5:1-3) (emphasis added);

- The reason the plaintiff made the loan was "*because my husband told me* that . . . it was a good loan to make." (Tr. 17:23-24) (emphasis added);

- "[W]hen I [plaintiff] actually made . . . the loan, *it was really because of my husband*." (Tr 18:11-17) (emphasis added);

- Mr. Sansone's (plaintiff's attorney) questions to the plaintiff:

    Q: "What did your *husband tell you to induce you* [to] lend $100,000 to a business you knew nothing about?"

> A: "[My husband] told me that he knew [the
> defendant] for a long time and that he had this
> mortgage company and [my husband] thought
> it was a good loan to make to him."
> (Tr. 21:7-11) (emphasis added);
>
> Q: "You were *relying on your husband's judgment*."
>
> A: "Yes."
> (Tr. 21:16-17) (emphasis added);

- Mr. Sansone's question to the husband:

> Q: "And is that why *you convinced your wife to make the loan* of $100,000 to [the defendant] and to Monetary Funding Group, Inc.?" [The husband had testified that the defendant told him the business was doing well in 2002. (*See* Tr. 31:13-18.)]
>
> A: "Yes."
> (Tr. 31:19-22) (emphasis added);

(5) The defendant decided which company, MFG, Inc. or Monetary Funding Group, LLC ("MFG, LLC"), would borrow money from the plaintiff. The defendant decided that MFG, Inc. would be indebted to the plaintiff, together with the defendant (*see* Pl.'s Ex. 1 (showing that the loan was made to MFG, Inc. and signed by the defendant both as an agent of MFG, Inc. and individually); *see also* Tr. 39:14-19); and

(6) The husband, *not* the defendant, showed the promissory note to the plaintiff (*see* Tr. 26:16-18).

The absence of the predicate that there be a false representation by the defendant to the plaintiff is fatal to the viability of this § 523(a)(2)(A) action. But, even

assuming, *arguendo*, that the plaintiff and her husband had formed an agency relationship[1] such that any statement made to the agent/husband was the equivalent of making such a statement to the principal/plaintiff, this action would still fail because the plaintiff did not persuasively satisfy the elements of fraud under § 523(a)(2)(A).

As noted, the defendant concedes that the loan was not repaid in accordance with the terms of the promissory note, but that alone is insufficient for a determination that the plaintiff's debt is nondischargeable. *See, e.g.*, *In re Austin*, 132 B.R. 1, 3 (Bankr. E.D.N.Y. 1991) ("A bare promise to be fulfilled in the future, which is not carried out, does not render a consequent debt nondischargeable under section 523(a)(2)(A)."); *In re Barrios*, Case No. 06-11852, Adv. Pro. No. 06-01909, 2007 Bankr. LEXIS 2842, at *8 (Bankr. S.D.N.Y. Aug. 20, 2007) ("It is insufficient under section 523(a)(2)(A) simply to show that [a] debtor left unfulfilled a prior oral representation or promise. Were this showing sufficient, virtually every oral obligation would give rise to a non-dischargeable debt under § 523(a)(2)(A)." (internal citations omitted)).

The plaintiff's position in this proceeding appears to be that the defendant made

---

[1] "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *In re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) (quoting Restatement (Second) of Agency § 1(1) (1958) (internal citations omitted)). It is well-settled that a principal is bound by the acts of his or her agent if the principal consents to the act in advance or ratifies it after the fact. *See e.g.*, *P.A. Props. v. B.S. Moss' Criterion Ctr. Corp.*, No. 02 Civ. 4900, 2004 U.S. Dist. LEXIS 25623, *20 (S.D.N.Y. Dec. 22, 2004) ("Under the general law of agency, a principal may be liable to a third party on a transaction conducted by its agent if the agent was actually or apparently authorized to enter into the transaction . . . ."). Where *independent evidence* supports an agency relationship, a close familial relationship is accorded significant weight toward establishing the agency relationship. *See In re Verdon*, 95 B.R. 877, 883 (Bankr. N.D.N.Y. 1989) (citing *In re Kroh*, 88 B.R. 987, 993 (Bankr. W.D.Mo. 1988)).

Here, the plaintiff neither alleged in her pleadings nor offered evidence at trial that an agency relationship existed with her husband. Indeed, the plaintiff never even made that argument.

a false statement, *i.e.*, that MFG, Inc. was financially sound, and that statement was known by the defendant to be false at the time it was made. The record is silent as to any probative evidence in that regard, *i.e.,* books, records, tax returns, etc.

Rather, the plaintiff simply relies upon an attempt to impeach the credibility of the defendant's statement to the husband that MFG, Inc.'s business was doing well in 2002. (*See* Tr. 48:5-25; Tr. 49:1-9; Tr. 54:2-11.).[2] Having observed the defendant at trial and after assessing his credibility, the court finds credible the defendant's assertion that MFG, Inc. was "doing very well" in 2002, the year in which the subject debt arose. (*See* Tr. 45:11-13; Tr. 49:7-9; Tr. 54:2-9.) That conclusion is buttressed by the fact that the defendant made interest payments to the plaintiff for approximately three years. (*See* 6:1; Tr. 28:22-24; Tr. 29:1, 4-7; Tr. 46:6-14; *see also* Def. Exhs. A & B.)[3]

## CONCLUSION

For the foregoing reasons, the plaintiff has failed to prove the requisite elements of § 523(a)(2)(A). Accordingly, judgment shall enter in favor of the defendant, and IT IS SO ORDERED.

Dated this 29th day of January 2010 at Bridgeport, Connecticut.


Alan H. W. Shiff
United States Bankruptcy Judge

---

[2] On cross-examination the plaintiff succeeded in highlighting some discrepancies between the defendant's current testimony and his deposition testimony regarding the health of MFG, Inc. (*See* Tr. 48: 5-25; Tr. 49:1-9; Tr. 54: 2-11.) Some of that evidence concerned the financial condition of MFG, LLC which is not a party to the debt at issue. (Tr. 48: 19-25 (discussing whether the LLC was loaning money in 2002); Tr. 53:15-25 (discussing in what year MFG, LLC was profitable).) Accordingly, that evidence is irrelevant.

[3] It is worthy of note that the parties stipulated that the defendant paid $199,702.36 to the plaintiff. (Tr. 15:20-25; Tr. 16:1-9.) The stipulation did not identify what amount was allocated to the subject debt. The defendant testified, however, that 39 consecutive payments, totaling $90,987, were made on the subject debt. (Tr. 49:21-24.)